UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WILLIAM F. REYNOLDS, | § | |
| | § | |
| Plaintiff, | § | Cv. No. SA:12-CV-01112-DAE |
| | § | |
| vs. | § | |
| | § | |
| CITY OF POTEET, et al, | § | |
| | § | |
| Defendants. | § | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS; (2) DENYING AS MOOT PLAINTIFF'S MOTION
<u>FOR ALTERNATIVE DISPUTE RESOLUTION</u>

On February 14, 2013, the Court heard oral argument on (1) the

Motion to Dismiss for Failure to State a Claim filed by Defendants City of Poteet,

Texas; Lanelle Mathews, in her official capacity as City Manager for the City of

Poteet; the Poteet Police Department; Henry Dominguez, in his official capacity as

Police Chief for the Poteet Police Department; and Alice Ramos Bhirdo, in her

individual capacity and in her official capacity as an officer of the Poteet Police

Department (collectively, "the Poteet Defendants") (doc. # 8); and (2) Plaintiff's

Motion for Alternative Dispute Resolution (doc. # 15.).  Omar Rosales, Esq.,

appeared at the hearing on behalf of Plaintiff; Albert Lopez, Esq., appeared on

behalf of the Poteet Defendants; and Charles Straith Frigerio appeared on behalf of

Defendant Paul Schneider.  After reviewing the motions' supporting and opposing

1

memoranda, and considering the parties' arguments at the hearing, the Court

**GRANTS IN PART** and **DENIES IN PART** the Poteet Defendants' Motion

(doc. # 8); and **DISMISSES AS MOOT** Plaintiff's Motion for Alternative Dispute

Resolution (doc. # 15).

<u>BACKGROUND</u>

For the purposes of this Order, the Court assumes all well-pleaded

factual allegations in the Complaint to be true.  On May 1, 2010, Plaintiff William

F. Reynolds ("Plaintiff") was driving Northbound on Interstate 37 outside of

Poteet, Texas, when he encountered heavy traffic.  (Doc. # 1 ¶ 3.)  After being

stuck in traffic for about thirty minutes, a number of drivers attempted to leave the

roadway and to enter the access road.  (<u>Id.</u>)  At that time, Plaintiff noticed a

commotion and several cars honking their horns.  (<u>Id.</u>)  Plaintiff then saw

Defendant Alice Ramos Bhirdo ("Ramos Bhirdo") driving her car "in an erratic

manner, driving backwards in standstill traffic, causing a dangerous situation."

(<u>Id.</u>)  Ramos Bhirdo then moved her car, in reverse, approximately thirty feet, and

parked perpendicular to oncoming interstate traffic.  (<u>Id.</u> ¶ 13.)  The car was

unmarked, giving no indication that Ramos Bhirdo was a police officer.  (<u>Id.</u>)

Shortly thereafter, a vehicle pulled up to the left of Ramos Bhirdo's

car and began to honk.  (<u>Id.</u>)  When a male passenger of the other vehicle exited

the car and approached Ramos Bhirdo, Ramos Bhirdo, dressed in a police uniform, also exited her car and began yelling obscenities at him.  (<u>Id.</u>)

Plaintiff, stuck in traffic on the right side of the road, took out his cell phone and began to record the confrontation.  (<u>Id.</u> ¶ 14.)  Defendant Ramos Bhirdo continued to yell at the man, allegedly screaming, "Get in your car, motherfucker!" and "Get in your goddamn car!"  (<u>Id.</u>)  When Ramos Bhirdo noticed that Plaintiff was recording her actions, Plaintiff put down his cell phone and drove away.  (<u>Id.</u>)

Plaintiff had driven for about fifteen miles when he noticed Ramos Bhirdo's vehicle pull up next to him.  (<u>Id</u> ¶ 15.)  Ramos Bhirdo rolled down her window and yelled at Plaintiff, in front of his wife and child, "Pull over, motherfucker!  Right now, asshole!"  (<u>Id.</u>)

After Plaintiff pulled over, Ramos Bhirdo removed him from his vehicle and placed him under arrest.  (<u>Id.</u> ¶ 16.)  Plaintiff was handcuffed and placed in the back of Ramos Bhirdo's car.  (<u>Id.</u>)  Plaintiff complained that the handcuffs were too tight and were injuring his wrists, but Ramos Bhirdo refused to adjust them.  (<u>Id.</u>)  Then, Defendant Paul Schneider, whom the Complaint identifies as an officer of the Poteet Police Department, arrived.  (<u>Id.</u>)  Schneider told Plaintiff's wife to surrender Plaintiff's cell phone, which she did.  (<u>Id.</u>)

Schneider and Ramos Bhirdo proceeded to question Plaintiff.  (<u>Id.</u>) Then, alleges Plaintiff, Ramos Bhirdo and Schneider asked each other, "What can

we charge him with?"  (Id. ¶ 17.)  After deciding to charge Plaintiff with Felony

Evading Arrest, the Defendants took Plaintiff to jail, where he spent the night

before being released the following day.  (Id.)

   According to the Complaint, the Atascosa County District Attorney's

office dropped the charges against Plaintiff due to insufficient evidence.  (Id. ¶ 20.)

Plaintiff's cell phone was returned to him, but the video recording of Defendant

Ramos Bhirdo had been erased.  (Id. ¶ 21.)

   Following this incident, Plaintiff alleges that he discovered that

Defendant Ramos Bhirdo had been fired from other police departments for

excessive force, unprofessionalism, and tardiness.  (Id. ¶ 22.)  Plaintiff further

alleges that Defendant Schneider was investigated for an excessive force shooting

wherein Schneider shot and killed an unarmed suspect.  (Id.)

   On April 27, 2012, Plaintiff brought a § 1983 action against (1)

Defendants Ramos Bhirdo and Schneider in their individual and official capacities;

(2) the City of Poteet ("the City"); (3) Lanelle Mathews, in her official capacity as

City Manager for the City of Poteet; (4) the Poteet Police Department; and (4)

Henry Dominguez, in his official capacity as Police Chief for the Poteet Police

Department (collectively, "Defendants").  (See doc. # 1.)  The Complaint alleged

that the City of Poteet failed to properly train and/or supervise Defendants Ramos

Bhirdo and Schneider—in particular, that the City and Police Department failed to

investigate complaints against Defendants Ramos Bhirdo and Schneider or "to take action to prevent further violations of citizens' civil rights" by the Police Department.  (Id. ¶ 23.)

On July 23, 2012, Defendants filed a Motion to Dismiss for Failure to State a Claim.  (Doc. # 8.)  On December 14, 2012, Plaintiff filed a Motion for Alternative Dispute Resolution.  (Doc. # 15.)  These motions are now before the Court.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Twombly, 550 U.S. 544, 555–56 (2007).  In providing

grounds for relief, however, a plaintiff must do more than recite the formulaic

elements of a cause of action.  See id. at 556–57.  "The tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions," and courts "are not bound to accept as true a legal conclusion

couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotations and

citations omitted).  Thus, although all reasonable inferences will be resolved in

favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory

allegations."  Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir.

1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We

do not accept as true conclusory allegations, unwarranted factual inferences, or

legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency

should be "exposed at the point of minimum expenditure of time and money by the

parties and the court."  Twombly, 550 U.S. at 558 (citation omitted).  However, the

plaintiff should generally be given at least one chance to amend the complaint

under Rule 15(a) before dismissing the action with prejudice.  <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 329 (5th Cir. 2002).

<u>DISCUSSION</u>

Plaintiff brings § 1983 claims against all Defendants arising out of his May 1, 2010 arrest.  Section 1983 does not create any substantive rights; it provides a remedy for violations of federal statutory and constitutional rights.  <u>See</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 144 (1979).  "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." <u>Leffall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 525 (5th Cir. 1994).

According to Plaintiff, all Defendants violated his constitutional rights under color of law by:

(1)  "depriv[ing] him o[f] his good name and reputation" in violation of his substantive and procedural due process rights under the Due Process Clause of the Fourteenth Amendment (doc. # 1 ¶ 26);

(2)  stopping, detaining, searching, arresting, handcuffing, and incarcerating him in violation of his procedural due process rights under the Due Process Clause of the Fourteenth Amendment (<u>id.</u> ¶ 27);

(3)  subjecting him to "excessive force and cruel and unusual treatment" in violation of the Fourth and Fourteenth Amendments when he was "stopped, detained, searched, arrested, handcuffed, and incarcerated by Defendants in violation of the Fourth Amendment" (<u>id.</u> ¶ 27); and

(4)  "subject[ing] him to malicious prosecution in violation of his rights under the United States Constitution."  (<u>Id.</u> ¶ 29.)

Plaintiff alleges that Defendants Ramos Bhirdo and Schneider are liable in their individual capacities because they were acting under color of state law and that the City is liable "because it condoned, sanctioned, permitted and/or participated in [these] unconstitutional actions . . . ." (Id. ¶¶ 31– 33.)  The Court addresses each of these claims in turn.

I.      Plaintiff's Claims Against Dominguez, Mathews, and Ramos Bhirdo

        A.  Official Capacity

                The Poteet Defendants move to dismiss Plaintiff's claims against Lanelle Mathews, Alice Ramos Bhirdo, and Henry Dominguez in their official capacity because these claims are "redundant" in light of Plaintiff's claims against the City of Poteet.  (Doc. # 8 ¶ 6.)  As Plaintiff's counsel conceded at the hearing, Defendants are correct.  Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't. of Social Servs. of the City of New York, 436 U.S. 658, 690 n.55 (1978).  In Kentucky v. Graham, the Supreme Court explained that "[t]here is no longer a need to bring official capacity actions against local government officials [because] under Monell, . . . local government units can be sued directly."  473 U.S. 159, 165 & 167 n.14 (1985).

                Plaintiff has failed to proffer any relief that can be granted to him on his official-capacity claims that he cannot obtain based on his § 1983 claims

against the City of Poteet.  Under these circumstances, it is appropriate

to dismiss the official-capacity claims against Mathews, Ramos Bhirdo, and

Dominguez as redundant.  See James v. Texas Collin County, 535 F.3d 365, 373

n.6 (5th Cir. 2008) ("Claims against officials in their official capacities are actually

claims against the county."); Sanders-Burns v. City of Plano, 594 F.3d 366, 373

(5th Cir. 2010) (noting that plaintiff's § 1983 claims against a government entity

"render[ed] any official capacity claim against [an employee of that entity]

redundant").  Accordingly, Plaintiff's official-capacity claims against Mathews,

Ramos Bhirdo, and Dominguez are dismissed with prejudice.

    B.  Individual Capacity

        In addition to his official-capacity claims, Plaintiff also brings § 1983

claims against Defendant Ramos Bhirdo in her individual capacity.  In Schultea v.

Wood, the Fifth Circuit held that § 1983 individual capacity claims must satisfy a

heightened pleading standard, meaning that the complaints in such cases must be

pled with factual detail and particularity, not mere conclusory allegations.  47 F.3d

1427, 1430 (5th Cir. 1995) (en banc).  In such cases, the pleadings "must 'state

with factual detail and particularity the basis for the claim which necessarily

includes why the defendant-official cannot successfully maintain the defense of

immunity.'"  Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994) (quoting Elliott v.

Perez, 751 F.2d 1472, 1473 (5th Cir. 1985)).  To overcome a defendant-official's

qualified immunity defense, a plaintiff must allege facts showing that the defendant-official's actions "violate[d] clearly established law." Saldana v. Garza, 684 F.2d 1159, 1165 (1982).

For the reasons that follow, the Court finds that Plaintiff's Complaint states a claim under § 1983 against Defendant Ramos Bhirdo arising from a violation of his Fourth Amendment right to be free from unreasonable searches and seizures. With the exception of Plaintiff's Fourteenth Amendment excessive force claims, which will be dismissed with prejudice, the Court will dismiss Plaintiff's remaining claims without prejudice and allow Plaintiff an opportunity to cure the pleading deficiencies.

    1.  Deprivation of Good Name or Reputation

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws." Baker v. McCollan, 443 U.S. 137, 140 (1979). If a plaintiff cannot satisfy this "threshold requirement," there can be no action under § 1983. Id. "In order to state a claim under § 1983 for violation of the due process clause of the fourteenth amendment, a litigant must show that he has asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that he was intentionally or recklessly deprived of that interest, even temporarily, under color of state law."

Clarke v. Stalder, 103 F.3d 126 (5th Cir. 1996) (per curiam) (internal quotation marks omitted).

In this case, Plaintiff alleges, first, that he was "deprived of his substantive and procedural due process rights under the Due Process Clause of the Fourteenth Amendment to the United State[s] Constitution when Defendants deprived him of his good name and reputation." (Doc. # 1 ¶ 26.) Judging from the remainder of the Complaint, Plaintiff seems to be alleging that by arresting him, charging him with a felony, and making him spend a night in jail, the Defendant Ramos Bhirdo deprived him of his interest in his good reputation.

In Paul v. Davis, the Supreme Court held that "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' nor 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." 424 U.S. 693, 701 (1991). Instead, "[t]o establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." Moore v. Otero, 557 F.2d 435, 437 (5th Cir. 1977). In his Complaint, Plaintiff has not alleged that the deprivation of his good name and reputation has affected a tangible interest of his. Instead, the Complaint contains only the conclusory statement that "Defendants' actions . . . damaged Plaintiff's reputation and good name." (Doc. # 1 ¶ 24.)

Because one's good name or reputation, in itself, is not a life, liberty, or property interest that is sufficient to invoke the procedural protection of the Due Process Clause, see Paul, 424 U.S. at 701, 711, Plaintiff has failed to state a § 1983 claim based on the alleged damage to his reputation.

### 2.   Violation of Procedural Due Process Rights

Second, Plaintiff appears to allege that Defendant Ramos Bhirdo "violated his procedural due process rights under the Due Process Clause of the Fourteenth Amendment" when she "stopped, detained, searched, arrested, handcuffed, and incarcerated" him.  (Doc. # 1 ¶ 27.)

Procedural due process concerns the fundamental fairness of a State's procedures.  See Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  Procedural due process claims require a two-part analysis: (1) whether the plaintiff has a liberty or property interest that is entitled to procedural due process protection; and (2) if so, what process is due.  Id. at 332–33.  However, claims of procedural due process violations are not cognizable in federal court if adequate post-deprivation state tort remedies exist.  Parratt v. Taylor, 451 U.S. 527 (1981) (overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330 (1986)); see also Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995) (same).

Applying this precept to the instant case, it is clear that a claim of deprivation of procedural due process cannot proceed, since Plaintiff has adequate

post-deprivation state tort remedies to pursue a recovery for his alleged injuries.

Plaintiff alleges that Defendant Ramos Bhirdo violated his procedural due process

rights when she "stopped, detained, searched, arrested, handcuffed, and

incarcerated" him.  (Doc. # 1 ¶ 27.)  However, Plaintiff's allegations involve the

actions of one police officer, Ramos Bhirdo; and Plaintiff may bring state tort

actions against Ramos Bhirdo to recover for the injuries he alleges.  See, e.g.,

Montgomery Ward & Co. v. Garza, 660 S.W.2d 619, 621 (Tex. App. 1983)

(recognizing that Texas law creates civil liability for false arrest); Murphy v.

Collins, 26 F.3d 541, 543 (5th Cir. 1994) (recognizing that "the tort of conversion

fulfills this requirement [of an adequate post-deprivation remedy]").  Importantly,

Plaintiff does not challenge the fundamental fairness of Texas's procedures for

depriving individuals of liberty or property interests, and "a complaint does not

state a valid procedural due process objection—and a valid § 1983 claim—if it

does not include a challenge to the fundamental fairness of the State's procedures."

Daniels v. Williams, 474 U.S. 327, 339 (1986) (Stevens, J., concurring).

Accordingly, because there is are adequate post-deprivation remedies available to

Plaintiff under state law, his claims based on alleged violations of procedural due

process must be dismissed.

13

3.  <u>Excessive Force Claims</u>

Plaintiff alleges that he was subjected to excessive force in violation of the Fourth and Fourteenth Amendments when he was "stopped, detained, searched, arrested, handcuffed, and incarcerated."  (Doc. # 1 ¶ 27.)   The Supreme Court has expressly rejected the use of the Fourteenth Amendment's due process clause under these circumstances, insisting that the Fourth Amendment provides an explicit source of protection and should be used instead.  <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) (All claims that "law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach.") (internal quotations omitted).  Accordingly, because it would be futile to amend, Plaintiff's Fourteenth Amendment excessive force claims are dismissed with prejudice.

To prevail on a Fourth Amendment excessive force claim, a plaintiff must show "'(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" <u>Ontiveros v. City of Rosenberg</u>, 564 F.3d 379, 382 (5th Cir. 2009) (quoting <u>Freeman v. Gore</u>, 483 F.3d 404, 416 (5th Cir. 2007)).

In this case, Plaintiff's only allegation that Defendants used excessive force against him stems from his allegation that he "was handcuffed and placed in the back of Defendant's car" and that "the handcuffs were overly tight and were injuring his wrists."  (Doc. # 1 ¶ 16.)  In a very similar case, the Fifth Circuit held that "handcuffing too tightly, without more, does not amount to excessive force." Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001); Tarver v. City of Edna, 410 F.3d 745, 752 ("As [plaintiff] does not allege any degree of physical harm greater than de minimis from the handcuffing, we find that he has not satisfied the injury requirement of a § 1983 claim.").

Accordingly, even viewing these facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not stated a claim for excessive force under the Fourth Amendment.  Because Plaintiff may be able to cure this pleading deficiency, however, the Court will dismiss the Fourth Amendment excessive force claims without prejudice.

### 4.  Unreasonable Search and Seizure Under the Fourth Amendment

Plaintiff does not explicitly allege that Defendant Ramos Bhirdo violated his Fourth Amendment right to be free from unreasonable searches and seizures.  Nevertheless, "courts must consider the complaint in its entirety" when determining whether it states a claim.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  Even though Plaintiff does not explicitly allege that his

arrest, search, and detainment constituted an unlawful search and seizure, the Court concludes that the allegations in the Complaint, taken as a whole and taken as true, do state such a claim.

"The basic purpose of [the Fourth] Amendment, as recognized in countless decisions of [the Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Mun. Court of City & County of San Francisco, 387 U.S. 523, 528 (1967). "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." Elkins v. United States, 364 U.S. 206, 222 (1960). Accordingly, even a short detention, if unreasonable considering the circumstances, can constitute an unlawful seizure. See United States v. Brignoni–Ponce, 422 U.S. 873, 877 (1975) (holding that the Fourth Amendment applies to seizures that involve only a brief detention short of traditional arrest). The reasonableness inquiry is driven by a balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Pierre, 958 F.2d 1304, 1308–09 (5th Cir. 1992) (citing New York v. Class, 475 U.S. 106, 118 (1986)).

A law enforcement officer may lawfully stop a vehicle (with one major exception pertinent only in the border area) only when there is probable

cause to stop the vehicle or, lacking probable cause, when the officer has a

reasonable suspicion, supported by articulable facts, that criminal activity "may be

afoot."  See United States v. Sokolow, 490 U.S. 1, 7 (1989); see also United States

v. Ibarra–Sanchez, 199 F.3d 753, 758 (5th Cir. 1999).  The latter type of stop is

often referred to as an investigative or Terry stop.  See Terry v. Ohio, 392 U.S. 1

(1968); United States v. Cooper, 43 F.3d 140, 145 (5th Cir. 1995).  The "criminal

activity" that can justify an investigative stop includes traffic violations, however

minor.  See Pennsylvania v. Mimms, 434 U.S. 106 (1977) (per curiam) (stop for

expired license plate); United States v. Kelley, 981 F.2d 1464 (5th Cir. 1993) (stop

for seatbelt violation).  Moreover, in Whren v. United States, 517 U.S. 806 (1996),

the Supreme Court held that the actual motivations of the individual officer

involved in making the stop did not matter, so long as "the circumstances, viewed

objectively, justif[ied]" the stop on some basis.  Id. at 812–13.

   According to the Complaint, however, Plaintiff had done nothing to

raise a reasonable suspicion that criminal activity was afoot when Defendant

Ramos Bhirdo pulled him over and arrested him.  The Complaint does not indicate

that Plaintiff was speeding or violating any other law when he drove away from the

scene of the confrontation between Defendant Ramos Bhirdo and an unidentified

male.  (Doc. # 1 ¶ 14.)  Nevertheless, the Complaint alleges that when Plaintiff was

approximately fifteen miles away, Defendant Ramos Bhirdo appeared and insisted

that he pull his car over.  (Id. ¶¶ 15–16.)  Once Plaintiff had pulled over, Defendant

Ramos Bhirdo allegedly removed Plaintiff from the car, handcuffed him, and—

when Defendant Schneider arrived—searched him, confiscating his cell phone.

(Id. ¶¶ 16–17.)  Taking the allegations in the Complaint as true, Defendant Ramos

Bhirdo did not have specific, articulable reasons to justify pulling Plaintiff over or

confiscating his cell phone.

        Furthermore, once a police officer has pulled a car over, she should

use the least intrusive means reasonably available to verify or dispel her suspicion

in a short period of time.  Valadez, 267 F.3d 395, 398 (5th Cir. 2001).  An officer

can request a driver's license, insurance papers, and vehicle registration; he or she

may also run a computer check and issue a citation.  United States v. Shabazz, 993

F.2d 431, 437 (5th Cir. 1993).  The officer may detain and question the subjects of

a traffic stop during the time a computer check is being conducted.  United States

v. Dortch, 199 F.3d 193, 198 (5th Cir. 1999), opinion corrected on other grounds,

203 F.3d 883 (5th Cir. 2000).  However, a Fourth Amendment violation occurs

when the detention extends beyond the valid reason for the stop.  Dortch, 199 F.3d

at 198.  Once a computer check is completed and the officer either issues a citation

or determines that no citation should be issued, the detention should end and the

driver should be free to leave.  Id.  In order to continue a detention after such a

point, the officer must have a reasonable suspicion supported by articulable facts

that a crime has been or is being committed.  United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000); see also Valadez, 267 F.3d at 398 ("[O]nce an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion.").

Again, Plaintiff's allegations, taken as true, indicate that Defendant Ramos Bhirdo—even assuming she was justified in pulling Plaintiff over to begin with—unreasonably extended the stop.  According to the Plaintiff, once Defendant Ramos Bhirdo realized that he was carrying no contraband, she and Defendant Schneider continued to detain Plaintiff and began discussing what they could charge him with.  (Doc. # 1 ¶ 17.)  Finally, after deciding to charge him with Felony Evading Arrest, Defendants jailed Plaintiff overnight.  (Id. ¶ 17.)

In light of Plaintiff's allegations (1) that Defendant Ramos Bhirdo had no reasonable suspicion to pull his car over; (2) that Defendant Ramos Bhirdo, along with Defendant Schneider, attempted to fabricate a charge against Plaintiff when their search of his person found nothing incriminating; and (3) that Defendants Ramos Bhirdo and Schneider then jailed him overnight, Plaintiff has stated a claim under § 1983 based on an unreasonable search and seizure in violation of the Fourth Amendment.  Moreover, because a reasonable police officer would have realized that Defendant Ramos Bhirdo's alleged actions were in clear violation of established law, Plaintiff's allegations satisfy the heightened pleading

requirement for § 1983 individual capacity claims.  See Saldana, 684 F.2d at 1165.

Accordingly, the Court denies the Poteet Defendants' Motion to Dismiss for

Failure to State a Claim insofar as Plaintiff brings § 1983 claim for unreasonable

search and seizure against Defendant Ramos Bhirdo in her individual capacity.

### 5.   Malicious Prosecution Claim

Plaintiff alleges that Defendants "subjected him to malicious

prosecution in violation of his rights under the United States Constitution."  (Doc.

# 1 ¶ 29.)  The Poteet Defendants argue that Plaintiff fails to state a claim because

he "has alleged only a freestanding claim of malicious prosecution which does not

state a claim for a constitutional violation."  (Doc. # 8 at 4–5.)

Again, "[t]he first inquiry in any § 1983 suit . . . is whether the

plaintiff has been deprived of a right 'secured by the Constitution and laws.'"

Baker, 443 U.S. at 140.  In Castellano v. Fragozo, the Fifth Circuit held that

"causing charges to be filed without probable cause [does] not without more

violate the Constitution."  352 F.3d 939, 953 (5th Cir. 2003).  Accordingly, a

freestanding § 1983 claim based solely on "malicious prosecution" is not

cognizable.  Id. at 942. The Castellano panel added, however, that "additional

government acts that may attend the initiation of a criminal charge could give rise

to claims of constitutional deprivation."  Id. at 953.  Thus "[t]he initiation of

criminal charges without probable cause may set in force events that run afoul of

explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued."  Id.  To prevail, therefore, a § 1983 plaintiff must allege that officials violated specific constitutional rights in connection with a "malicious prosecution."  See Cuadra v. Hous. Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010).

   Plaintiff does not indicate with specificity which of his constitutional rights were violated as a result of the alleged malicious prosecution; he states only that "Defendants subjected him to malicious prosecution in violation of his rights under the United States Constitution."  (Doc. # 1 ¶ 29 (emphasis added).)  As the Castellano court stated, however, a court "must insist on clarity in the identity of the constitutional violations asserted."  352 F.3d at 945.  Because Plaintiff does not state with specificity the constitutional rights that were allegedly violated as a result of a malicious prosecution, and because the Court finds nothing in the Complaint to suggest that Plaintiff meant to allege violations arising from this incident other than the claims that he alleged under the Fourteenth and Fourth Amendments (described above), Plaintiff's § 1983 claim for malicious prosecution must be dismissed, without prejudice, for failure to state a claim.

II.     Plaintiff's Claims Against the City and the Police Department

    A.   The Poteet Police Department

        A plaintiff may not bring a claim against a governmental agency or department unless it enjoys a separate and distinct legal existence.  Darby v. Pasadena Police Dep't, 939 F.2d 311, 313–14 (5th Cir. 1991).  State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit.  Id.  The capacity to sue or be sued is determined by the law of the state where the district court is located.  Fed. R. Civ. P. 17(b)(2), (3); Darby, 939 F.2d at 313–14.

        In Texas, county sheriff's departments and police departments are not legal entities capable of being sued in the absence of express action by the superior corporation (the county, in the case of a sheriff's department, and the city, in the case of a police department) "to grant the servient agency with jural authority."  Darby, 939 F.2d at 313.  Accordingly, in Darby, the Fifth Circuit affirmed a district court's dismissal of claims that were brought against a police department rather than the city after concluding that the police department had no capacity to sue or be sued.   939 F.2d at 313; see also Thomas–Melton v. Dallas County Sheriff's Dep't, No. 94–10049, 39 F.3d 320 (5th Cir. Oct. 25, 1994) (sheriff's department was not proper party); Alcala v. Dallas County Sheriff, No. 92–1053, 988 F.2d

1210 (5th Cir. Mar. 12, 1993) (unpublished) (same).[1]  Because—as Plaintiff's counsel conceded at the hearing—there is no indication that the Poteet Police Department enjoys legal existence separate from the city of Poteet, it is not a proper party, and the cause of action against it must be dismissed.  See Darby, 939 F.2d at 313 (affirming dismissal of claims brought against police department, a non-jural entity); see also Jacobs v. Port Neches Police Dept., 915 F. Supp. 842, 844 (E.D. Tex. 1996) (dismissing claims against a county sheriff's department because there was no indication that the department enjoyed a separate legal existence under state law).

   B.   The City of Poteet

        A governmental entity may not be held liable for the acts of its employees under a theory of respondeat superior.  See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978); Colle v. Brazos County, 981 F.2d 237, 244 (5th Cir. 1993); Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). Instead, "[m]unicipal liability inures only when the execution of a local

---

[1] The Court in Alcala, relying solely on the holding in Darby in concluding that a sheriff's department could not be sued, stated that its decision was to be unpublished because "[t]he publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Alcala, No. 92-1853, 988 F.2d 1210 (5th Cir. March 12, 1993) at 1 n.* (emphasis added) (citation omitted).

government's policy or custom causes the injury." <u>Baker v. Putnal</u>, 75 F.3d 190, 200 (1996).

The Fifth Circuit explained in <u>Piotrowski v. City of Houston</u> that "municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  237 F.3d 567, 578 (5th Cir. 2001) (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)).  "The three attribution principles identified here—a policymaker, an official policy and the moving force of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." <u>Id.</u> (internal quotations omitted).  A custom or policy need not stem from a policy statement formally announced by an official policymaker; it can be demonstrated through a "'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" <u>Id.</u> at 168–69 (quoting <u>Webster v. City of Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984)).

Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents involving employees is not sufficient to show the existence of a custom or policy.  <u>See</u> <u>Fraire</u>, 957 F.2d at 1278 (citing

Rodriguez, 871 F.2d at 554).  "'Isolated violations are not the persistent, often

repeated constant violations that constitute custom and policy' as required for

municipal section 1983 liability."  Campbell, 43 F.3d at 977 (quoting Bennett v.

City of Slidell, 728 F.2d 762, 768 n. 3 (5th Cir. 1984), cert. denied, 472 U.S. 1016

(1985)).  To demonstrate a governmental policy or custom under § 1983, a plaintiff

must at least show:

> a pattern of similar incidents in which citizens were injured or endangered
> by intentional or negligent police misconduct and/or that serious
> incompetence or misbehavior was general or widespread throughout the
> police force.

Fraire, 957 F.2d at 1278 (citing Languirand, 717 F.2d at 227–228).  Only if the

plaintiff shows that his injury resulted from a "'permanent and well-settled'"

practice may liability attach for injury resulting from a local government custom.

See Praprotnik, 485 U.S. at 127 (quoting Adickes v. S.H. Kress & Co., 398 U.S.

144, 168 (1970)).

At the motion to dismiss stage, "only minimal factual allegations

should be required" in § 1983 suits against municipalities, and "those allegations

need not specifically state what the policy is, as the plaintiff will generally not have

access to it, but may be more general."  Thomas v. City of Galveston, 800 F. Supp.

2d 826, 843 (S.D. Tex. 2011); see also Leatherman v. Tarrant County Narcotics

Intelligence and Coordination Unit, 507 U.S. 163 (1993) (rejecting the Fifth

Circuit's then-existing heightened pleading requirement in § 1983 cases alleging

municipal liability).  Nevertheless, "a plaintiff suing a municipality must provide fair notice to the defendant, and this requires more than genetically restating the elements of municipal liability."  Thomas, 800 F. Supp. 2d at 844–45. "Allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." Id. (footnotes omitted).  Where a plaintiff provides more than a boilerplate recitation of the grounds for municipal liability and instead makes some additional allegation to put the municipality on fair notice of the grounds for which it is being sued, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." Leatherman, 507 U.S. at 168–69.

In this case, the allegations of municipal liability contained in the Complaint are insufficient to state a claim for municipal liability.  Plaintiff does not allege that there was an official policy of permitting police officers to perform unreasonable searches and seizures in violation of the Fourth Amendment, to use excessive force, or to commit any other constitutional violations.  Instead, Plaintiff bases his claim on the City's alleged failure to train or discipline police officers.

To establish a claim under § 1983 for failure to train or supervise, a plaintiff must show: (1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to "deliberate indifference."  Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).  To satisfy the "deliberate indifference" prong, a plaintiff must demonstrate both (1) a pattern of violations and (2) that the inadequacy of the training is obvious and obviously likely to result in the constitutional violation.  Estate of Davis, 406 F.3d 375 at 381.

Plaintiff alleges that the City of Poteet is liable for the conduct of Defendants Ramos Bhirdo and Schneider because its "training and/or supervision procedures were inadequate"; and it "was deliberately indifferent in adopting or in the alternative failing to adopt a training and/or supervision policy."  (Doc. # 1 ¶ 35.)  Specifically, Plaintiff alleges that "Defendant City was deliberately indifferent in failing to discipline and/or supervise Defendants Ramos Bhirdo and Schneider after Defendant City became aware of complaints against [them] for failure to exercise proper judgment and excessive use of force . . . ."  (Id.)  Plaintiff also alleges, as he must, that the City's "inadequate training and/or supervision policy" and its "failure to properly discipline Defendant Ramos Bhirdo directly caused [his] injuries."  (Id.)

However, Plaintiff has not alleged a pattern of violations of constitutional rights that could give rise to the inference that the City of Poteet was deliberately indifferent to the risk that constitutional violations would result from its failure to train its officers; he alleges just one incident involving, at most (since Defendant Schneider may not be an employee of the City of Poteet), two officers. Nor has Plaintiff alleged facts to suggest that the way in which the City trains its police officers is "obvious[ly inadequate] and obviously likely to result in the constitutional violation." Estate of Davis, 406 F.3d 375 at 381.  Accordingly, even if it is true that the City failed to discipline Defendants Ramos Bhirdo and Schneider after receiving complaints about them, Plaintiff's allegations fall far short from raising the inference that there was an unofficial custom or policy of failing to properly train police officers or that the City was "deliberately indifferent" to that its police officers would violate citizens' rights.

Nevertheless, because these pleading deficiencies may be curable, the Court will not dismiss Plaintiff's claims with prejudice at this point.  If Plaintiff can allege facts sufficient to raise the inference that Defendant Ramos Bhirdo's actions were not just "random acts or isolated incidents," Fraire, 957 F.2d at 1278, but were instead a reflection of a custom or policy of the City and Police Department, id., he may be able to state a claim for municipal liability.

III.   Plaintiff's Claims Against Paul Schneider

    A.   Official Capacity

        The Complaint brings the same claims against Paul Schneider that it brings against Defendant Alice Ramos Bhirdo.  However, it appears that the Complaint incorrectly identified Defendant Schneider as an officer of the Poteet Police Department (see doc. # 1 ¶ 7) when he is actually a Deputy with the Atascosa County Sheriff's Department (doc. # 10).  Accordingly, the Motion to Dismiss that is currently before the Court, filed by the Poteet Defendants, does not explicitly address the claims brought against Defendant Schneider.  (See doc. # 8.) Nevertheless, the Court will address whether the Complaint states a claim against Defendant Schneider.

        The Court need not determine at this stage whether Defendant Schneider is an officer with the Poteet Police Department or a Deputy with the Atascosa County Sheriff's Department; in either case, Plaintiff's claims against Schneider in his official capacity must be dismissed.  First, for the reasons already given, official-capacity claims against an officer are redundant; they "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Monell v. Dep't. of Social Servs. of the City of New York, 436 U.S. 658, 690 n. 55 (1978).  Because the Complaint brings § 1983 claims against the city of Poteet, if Defendant Schneider is indeed an officer of the Poteet

Police Department, the claims against him in his official capacity are redundant and must be dismissed.

Similarly, if Defendant Schneider is a Deputy with the Atascosa Sheriff's Department, any official-capacity claim brought against him is, in effect, a claim brought against the Sheriff's Department.  And because the Sheriff's Department is a non-jural entity without the capacity to sue or be sued, see Jacobs, 915 F. Supp. at 844, neither the Department nor Schneider in his official capacity is a proper party.  Accordingly, the official-capacity claims against Defendant Schneider are dismissed with prejudice.

B.  Individual Capacity

Plaintiff brings many of the same causes of action against Defendant Schneider as he does against Defendant Ramos Bhirdo.  For the reasons given above, Plaintiff has failed to state a § 1983 claim against either of these defendants based on excessive force, violations of procedural due process, or malicious prosecution.

However, again for the reasons given above, Plaintiff has stated a claim under § 1983 arising from the unlawful search and seizure of his car, phone, and person in violation of the Fourth Amendment.  While Defendant Schneider was not involved in the initial stop of Plaintiff's car (see doc. # 1 ¶¶ 15–16), Plaintiff alleges facts indicating that Defendant Schneider, like Defendant Ramos

Bhirdo, unreasonably prolonged the stop.  (<u>Id.</u> ¶ 17.)  According to the Complaint,

both Defendant Ramos Bhirdo and Defendant Schneider realized that Plaintiff had

not committed a crime, yet both decided to continue to detain Plaintiff and to jail

him overnight.  (<u>Id.</u>)  These allegations are sufficient to raise a reasonable

inference that Defendant Schneider may be liable under § 1983 for unreasonably

detaining Plaintiff and searching his person in violation of the Fourth Amendment.

Accordingly, Plaintiff's claims against Defendant Schneider in his personal

capacity survive the motion to dismiss phase.

IV.   <u>Leave to Amend</u>

        Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend]

when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The policy of the federal

rules is to permit liberal amendment to facilitate determination of claims on the

merits and to prevent litigation from becoming a technical exercise in the fine

points of pleading."  <u>Dussouy v. Gulf Coast Inv. Corp.</u>, 660 F.2d 594, 598 (5th Cir.

1981).   Following the Supreme Court's guidance, the Fifth Circuit uses five

factors to determine whether to grant a party leave to amend a complaint: 1) undue

delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by

previous amendments, 4) undue prejudice to the opposing party, and 5) futility of

the amendment.  <u>Rosenzweig v. Azurix Corp.</u>, 332 F.3d 854, 864 (5th Cir. 2003)

(citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  Absent any of these factors, leave should be "freely given."  <u>Foman</u>, 371 U.S. at 182.

Because none of the five <u>Foman</u> factors applies in this case, the Court will allow Plaintiff an opportunity to file an amended complaint within forty-five (45) days of the filing of this Order.  Failure to do so and to cure the pleading deficiencies will result in dismissal with prejudice of those claims dismissed without prejudice by this Order.

V.    <u>Plaintiff's Motion for Referral to Alternative Dispute Resolution</u>

In light of the Court's decision to grant in part the Poteet Defendants' Motion to Dismiss and to grant Plaintiff leave to amend his complaint, the Court denies as moot Plaintiff's motion to refer this dispute to alternative dispute resolution.  Plaintiff may, if he wishes, renew this motion following the filing of his amended complaint.

<u>CONCLUSION</u>

For the reasons given, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Poteet Defendants' Motion (doc. # 8).  The Court **DISMISSES WITH PREJUDICE** Plaintiff's claims against Lanelle Mathews, Alice Ramos Bhirdo, Henry Dominguez, and Paul Schneider in their official capacity; Plaintiff's claims against the Poteet Police Department; and Plaintiff's claims alleging excessive force in violation of the Fourteenth Amendment.  The

Court **DENIES** the Poteet Defendants' Motion to Dismiss insofar as Plaintiff has stated a valid claim under § 1983 against Defendants Ramos Bhirdo and Schneider arising from an unreasonable search and seizure in violation of the Fourth Amendment; **DISMISSES WITHOUT PREJUDICE** Plaintiff's remaining claims; and **DISMISSES AS MOOT** Plaintiff's Motion for Alternative Dispute Resolution.  (Doc. # 15.)  It is **FURTHER ORDERED** that Plaintiff is granted leave to file an amended complaint and that such amended complaint must be filed on or before April 1, 2013.

        **IT IS SO ORDERED.**

        **DATED**: San Antonio, Texas, February 15, 2013.

_____

David Alan Ezra
Senior United States District Judge