UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WILLIAM F. REYNOLDS, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | No. SA:  12-CV-1112-DAE |
| CITY OF POTEET, ALICE RAMOS | § | |
| BHIRDO, in her individual capacity, | § | |
| and PAUL SCHNEIDER, in his | § | |
| individual capacity, | § | |
| | § | |
|     Defendants. | § | |

ORDER (1) GRANTING DEFENDANT CITY OF POTEET'S MOTION FOR
SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT SCHNEIDER'S
MOTION FOR SUMMARY JUDGMENT

Plaintiff William F. Reynolds filed suit under § 1983 against

defendants Paul Schneider ("Schneider"), the City of Poteet ("the City"), and Alice

Ramos Bhirdo ("Bhirdo").  On March 3, 2014, the Court heard argument on

Defendants' Motions for Summary Judgment (Dkt. ## 33, 34.)  Omar W. Rosales,

Esq., represented Plaintiff; Charles Frigerio, Esq., represented Defendant Paul

Schneider, and Albert Lopez, Esq., represented the City of Poteet.  Upon careful

consideration of the supporting and opposing memoranda, as well as the parties'

arguments at the hearing, the Court **GRANTS** the City of Poteet's Motion for

Summary Judgment (Dkt. # 34), and **GRANTS** Defendant Schneider's Motion for

Summary Judgment (Dkt. # 33).

<u>BACKGROUND</u>

Plaintiff's allegations stem from an incident that occurred on May 1,

2010, involving Bhirdo, a City of Poteet police officer, and Schneider, a peace

officer for the Atacosa Sherriff's Office.  (Dkt. # 25, ("FAC").)  According to

Plaintiff, on Saturday May 1, 2010, Plaintiff was driving north on Interstate 37

near Poteet, Texas.  (FAC ¶ 9.)  Plaintiff states there was heavy traffic, and he

attempted to exit the interstate to drive on the frontage road.  (<u>Id.</u>)  As Plaintiff was

stopped on the interstate, he observed a commotion in front of him.  (<u>Id.</u>)  Plaintiff

observed an unmarked car drive "in an erratic manner, driving backwards in

standstill traffic" and subsequently park perpendicularly to the direction of travel

on the interstate.  (<u>Id.</u>)  Bhirdo was driving the unmarked car that Plaintiff later

learned was her personal vehicle.  (<u>Id.</u> ¶ 10.)  Plaintiff then observed another car

pull alongside of Bhirdo's car and honk.  (<u>Id.</u>)  Shortly thereafter, Plaintiff states a

passenger from the third car approached Bhirdo's car, and Bhirdo exited her car

and yelled obscenities at the individual.  (<u>Id.</u> ¶ 11.)  Plaintiff claims he recorded the

ensuing confrontation on his cell phone.  (<u>Id.</u> ¶ 12.)  Plaintiff states that Bhirdo

noticed she was being filmed, and in response Plaintiff put his cellphone away, and

drove off.  (<u>Id.</u>)

Plaintiff claims that after he had been driving for approximately 15 miles, Bhirdo pulled up alongside him and yelled at him through her window, "Pull over motherfucker. Right now asshole." (Id. ¶ 13.) Plaintiff alleges that he pulled over, and Bhirdo removed him from his vehicle and arrested him. (Id. ¶ 14.) Plaintiff states he was handcuffed and placed in the back of Bhirdo's car. (Id.) Plaintiff claims he complained the handcuffs were too tight, but Bhirdo refused to adjust them.

Plaintiff states that Schneider arrived on the scene after he was arrested as backup for Bhirdo. (Id. ¶ 15.) Plaintiff alleges that Schneider told Plaintiff's wife to give him the cellphone, which she did. (Id.) Plaintiff states that Bhirdo and Schneider then interrogated him, and allegedly asked each other what they could charge him with. (Id. ¶ 16.) Plaintiff claims the officers charged him with Felony Evading Arrest, and took him to jail in Bhirdo's vehicle. (Id. ¶ 16.) Plaintiff spent the night in jail and was brought before a magistrate the following day. (Id.) Plaintiff claims his cellphone was later returned, but that the video recording of Bhirdo was missing. (Id. ¶ 20.)

Plaintiff subsequently filed the instant lawsuit. Plaintiff asserts multiple claims against the City under § 1983 alleging the City failed to adequately screen its employees, including Bhirdo (FAC ¶ 28); maintained a custom or policy of stopping motorists without probable cause and conducting searches of motorists

3

to find grounds to issue tickets (FAC ¶ 33); and failed to properly train and supervise its employees (FAC ¶ 36). Plaintiff also asserts claims against Bhirdo and Schneider alleging violations of his Fourth Amendment rights pursuant to § 1983. (FAC ¶¶ 42–43, 47–48.) The City of Poteet and Schneider have each moved for summary judgment.

## LEGAL STANDARD

A court must grant summary judgment when the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court evaluates the proffered evidence in the light most favorable to the non-moving party. Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994). The Court "examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists." Leghart v. Hauk, 25 F. Supp. 2d 748, 751 (W.D. Tex. 1998).

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party "to go beyond the pleadings and by [his or her] own affidavits, or by the depositions, answers to interrogatories, and

4

admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). The non-moving party "must, either by opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing a genuine issue as to a material fact exists." Leghart, 25 F. Supp. 2d at 751. "[Non-movants] are required to identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim." Id. Further, "Rule 56 does not require the district court to sift through the record in search of evidence to support a [non-movant's] opposition to summary judgment. Id.

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the Court must grant summary judgment against that party. Celotex, 477 U.S. at 322.

<u>ANALYSIS</u>

I.   <u>Plaintiff's Objections</u>

The Court first addresses Plaintiff's objections to the affidavits presented by the City in support of its motion for summary judgment.

Plaintiff objects to the City's affidavits from Frank Leal ("Leal") (Dkt. # 34, Ex. 1) and Henry Dominguez ("Dominguez") (id., Ex. 2). (Dkt. # 36). Plaintiff argues that these individuals are biased, that they have not been qualified

as experts, and that their affidavits contain conclusory facts and legal conclusions. (Id.)

The Court overrules each of these objections.  First, the credibility of the affiants is not of concern to the Court in deciding a motion for summary judgment – that is a task left to the jury at trial.  MAN Roland Inc. v. Kreitz Motor Express, Inc., 438 F.3d 476, 478–79 (5th Cir. 2006).  Second, these individuals are not testifying as expert witnesses.  Rather, Leal's affidavit details facts about which he has personal knowledge – the policies that were in place while he was a member of the Poteet Police Department and the expectations to which officers were held.  And Dominguez, Bhirdo's supervisor, testifies to his first-hand observations of her while she was employed by the Poteet Police Department. Finally, the averments of these officers do not constitute "conclusory facts," but instead are the officers' recollections of events they personally observed or experienced while employed by the Poteet Police Department.  These officers have presented the facts as they allegedly remember them, and their statements are proper evidence for the Court to consider during summary judgment.

## II.    The City of Poteet's Motion for Summary Judgment

Plaintiff asserts numerous claims against the City, including failing to properly screen employees, maintaining an official custom or policy of improperly

stopping motorists, and failing to properly train or supervise its employees.  The City has moved for summary judgment on each of these claims.

A.   Inadequate Screening

A municipality is not to be held liable for the actions of its employees under a theory of respondeat superior.  City of Okla. City v. Tuttle, 471 U.S. 808, 818 (1985).  "Where a claim of municipal liability rests on a single decision, not itself representing a violation of federal law and not directing such a violation, the danger that a municipality will be held liable without fault is high."  Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 408 (1997).  The Court recognized that "[c]ases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury it did not cause."  Id. at 415.  The Supreme Court elaborated, stating:

> Where a plaintiff presents a § 1983 claim premised upon the inadequacy of an official's review of a prospective applicant's record, however, there is a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself.  Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense:  But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury.  To prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

7

Id. at 410.  The Court recognized that a failure to properly screen employees can create a general risk, but held "[t]he fact that inadequate scrutiny of an applicant's background would make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." Id. at 410–11.  To establish liability under § 1983 on a theory of inadequate screening, a plaintiff must "demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Id.  The Court continued, stating, "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" Id. at 411.  "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury.  Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff." Id. at 412.

The City of Poteet argues that there is no evidence that would have apprised the City that hiring Bhirdo would lead to the particular injury here – Plaintiff's allegedly unlawful arrest.  (Dkt. # 34 ¶¶ 11–12.)  In contrast, Plaintiff

8

alleges that had the City conducted an internet search, it would have located

Bhirdo's Facebook page (Dkt. 34, Ex. D) and a comment on an internet article with

phrases including "For those of you who . . . sold your soul to the devil, . . . y'all

will get your when he gets his" (id.).  (FAC ¶¶ 31–32.)  The City provides copies

of these internet results as part of its summary judgment motion and argues that

none of these results would have put the City on notice that Bhirdo would likely

conduct unlawful arrests.  (Dkt. # 34.)

In response, Plaintiff argues that the City failed to adequately screen

Bhirdo, but had it done so, the City would have discovered that Bhirdo was "not

stable, [or] suited for police work."  (Dkt. # 36 at 11.)  In support of this argument

Plaintiff submitted the City's responses to interrogatories that state

> 19.   Please state if any background checks were performed on
>        Defendant Alice Ramos Bhirdo prior to her hiring by the City
>        of Poteet.  If so, please give the dates.
>
>        ANSWER:  The City of Pleasanton[1] has been unable to locate
>        any documents reflecting background checks.
>
> 20.   Please state if any internet searches were performed on
>        Defendant Alice Ramos Bhirdo prior to her hiring by the City
>        of Poteet.  If so, please give the dates.

---

[1] The Court has received no explanation for why these interrogatories refer to the City of Pleasanton when Defendant Bhirdo was hired by the City of Poteet. However, because neither party has objected to this discrepancy, the Court will assume it is correct and that the City of Pleasanton was responsible for maintaining the relevant records.

ANSWER:   The City of Pleasanton has been unable to locate any documents reflecting any such internet searches.

21.   Please state if any prior employers of Defendant Alice Ramos Bhirdo, were contacted prior to her hiring by the City of Poteet.

ANSWER:   The City of Pleasanton has been unable to locate any documents reflecting the information requested in this interrogatory.

(Dkt. # 36, Ex. 1.)

According to Plaintiff, "a basic internet check on Bhirdo would have revealed that Bhirdo had numerous problems in prior law enforcement jobs." (Dkt. # 36.)  In support of this assertion, Plaintiff submits a document detailing the reasons Bhirdo was placed on administrative leave in 2011. (Dkt. # 36, Ex. 2 at 3– 4.)  In total, three officers complained of Bhirdo's sexually explicit behavior in the workplace. (Id.)  The first officer complained that Bhirdo made comments regarding her personal life, including the physical attributes of her romantic partner and other sexually explicit comments that the other officer felt were inappropriate. (Id.)  This officer stated he was worried that this may cause her not to focus during her job and that these comments would weaken the overall morale of the police department. (Id.)  A second officer recalled Bhirdo had shown him pictures of herself dressed in "skimpy" attire. (Id. at 5.)  A third officer filed a complaint against Bhirdo on May 3, 2011 for making sexually explicit comments. (Id. at 6.)

In order to prove a claim for negligent screening, Plaintiff must show that the City's decision to hire Bhirdo reflected a deliberate indifference to the risk that the <u>particular</u> constitutional violation that occurred would follow its decision. The constitutional violation at issue here is the allegedly unreasonable search and seizure of Plaintiff.  Therefore, in order to survive the instant motion for summary judgment, Plaintiff must show that there is a genuine issue of material fact as to whether the City's hiring of Bhirdo reflected a deliberate indifference to the risk that Bhirdo would conduct unreasonable searches and seizures.

Plaintiff claims that the City's failure to properly conduct a background check on Bhirdo led to the injuries he suffered.  Although Plaintiff's evidence portrays Bhirdo as far from an ideal employee, that finding alone is not enough to justify holding the City liable for Bhirdo's later unrelated actions. Rather, to sustain this claim, Plaintiff must show that this information would have put the City on notice that there was a risk Bhirdo would conduct unreasonable searches and seizures.  Plaintiff has not done this.  The information Plaintiff claims the City neglected to find pertains to inappropriate sexually-explicit conduct in the workplace.  Although untoward, this information has little to no connection to the likelihood an officer will conduct an unreasonable search and seizure.  Even if the City had been aware of this information, it would not have put the City on notice

that there was a risk that Bhirdo would conduct unreasonable searches and
seizures.

Similarly, Bhirdo's comments on an internet news article discussing
her prior supervisors do not indicate that she would engage in unreasonable
searches and seizures.  Although these comments indicate Bhirdo was angry with
her previous supervisors, they do not indicate she was predisposed to violate an
individual's Fourth Amendment rights.  Even if the City had located these
comments during a background check of Bhirdo, these statements would not have
put it on notice that Bhirdo was likely to engage in the constitutional violations
alleged here.

This case presents the classic scenario in which the Supreme Court
cautioned municipal liability should not apply.  See Bd. of Cnty. Comm'rs of
Bryan Cnty., 520 U.S. at 410.  While it is true that the alleged violations Plaintiff
suffered would not have occurred but for the City's decision to hire Bhirdo, finding
this connection sufficient to hold a municipality liable would allow municipal
liability to collapse into pure respondeat superior liability.  See id.  Plaintiff cannot
show that the City's allegedly inadequate screening amounted to deliberate
indifference to the risk that Bhirdo would engage in the particular constitutional
violation Plaintiff alleges here.  Therefore, the municipality cannot be held liable
on a theory of inadequate screening.

12

Plaintiff provides no evidence that the City's alleged failure to conduct a thorough background check amounted to deliberate indifference to the risk that Bhirdo would conduct unreasonable searches and seizures.  Therefore, the Court **GRANTS** the City's Motion for Summary Judgment on this claim.

B.    Custom or Policy

Generally, a local municipality cannot be held liable for its employees misconduct pursuant to § 1983 under a theory of respondeat superior.  City of Okla. City, 471 U.S. at 818.  However, a municipality may be held liable if its employees deprived an individual of federally guaranteed right pursuant to an official custom or policy.  Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001).  An official custom or policy "may either be an explicitly promulgated policy or a persistent, widespread practice of City officials or employees, which, although not [officially] authorized[,] . . . is so common and well-settled as to constitute a custom that fairly represents municipal policy."  Montes v. Cnty. Of El Paso, Tex., 2010 WL 2035821, at *14 (W.D. Tex. 2010) (citing Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 383, 405-407 (1997)) (internal quotation marks omitted).  "When a 'custom' is proved by reference to a pattern of conduct, a plaintiff must also show that the relevant municipal policy-makers had actual or constructive knowledge of the custom."  Id.

Next, "a plaintiff must show that there was a causal link between the policy or custom and the deprivation of rights at issue." Id.  A plaintiff may satisfy this requirement by showing that the policy at issue was a "moving force" behind the deprivation of rights.  Id. (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978)).

Plaintiff argues that the City has a custom of encouraging the Poteet officers to "stop motorists without probable cause and conduct searches of the motorists to find grounds to issue tickets."  (FAC ¶ 33.)  Plaintiff alleges that the City required officers to meet a quota of tickets per month or the officers would be subject to disciplinary proceedings.  In support of this, Plaintiff submits two news articles indicating potential misconduct within the Poteet Police Department.  The first article reported that "[r]esidents told KENS5 the officers do whatever they want and make tickets disappear from municipal court so certain people can avoid fines.  One resident, who wished to remain anonymous, said he was roughed up for no reason."  (Dkt. # 36, Ex. 4.)  The article continued stating, "Poteet's new city manager is conducting an internal investigation on the police department," and indicated that the allegations dated back to 2005.  (Id.)  The second article reported, "Allegations surrounded Poteet after the misuse of traffic ticket procedures surfaced."  (Dkt. # 36, Ex. 5.)

Although the City did not object, these articles represent out-of-court statements offered to prove the truth of the matter asserted.  Generally, newspaper articles are inadmissible hearsay.  See Shockley v. U. of Tex. Medical Branch, 2008 WL 2223083, at *2 (N.D. Tex. 2009); Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005) (maintaining that newspaper articles are not competent summary judgment evidence because they are "classic, inadmissible hearsay."); Hicks v. Charles Pfizer & Co. Inc., 466 F. Supp. 2d 799, 805 (E.D. Tex. 2005) ("Newspaper articles are hearsay when offered to prove the truth of the matter asserted.").  Although occasionally, an article may "evince particular guarantees of trustworthiness," allowing the Court to consider them under the residual hearsay exception, generally, they are not sufficiently reliable.  Hicks, 466 F. Supp. 2d at 808.  "[Newspaper articles] are not sworn or certified, and the authors are not subject to cross-examination, rendering such articles incompetent summary judgment evidence.  Thus, any statements made or alluded to in newspaper articles ordinarily cannot be considered as evidence for summary judgment purposes."  Id. at 806.

Here, the newspaper articles do not exhibit sufficient guarantees of trustworthiness to warrant consideration under the residual hearsay exception.  The statements in the articles are vague, and some of the alleged sources are quoted

anonymously.  Therefore, the Court finds they are not competent summary judgment evidence, and the Court will not consider them.

In opposition, the City submits the written polices of the Poteet Police Department that state "[n]o Officer shall stop and/or detain any person unless he/she has reasonable grounds for suspecting that the person has committed a crime, is committing a crime, or where unusual circumstances . . . lead a Police Officer to reasonably conclude in light of his/her experience that criminal activity may be afoot . . . ."  (Dkt. # 34, Ex. C.)

Even taking this evidence in the light most favorable to Plaintiff, as required on summary judgment, there is no genuine issue of material fact as to whether the City had an official policy of stopping motorists without cause. Without evidence of a City policy, Plaintiff's claim cannot survive a motion for summary judgment because he cannot show the necessary causal link between the alleged policy and the violation of his rights.  Here, Plaintiff has presented no competent evidence showing the City may have had a custom or policy of stopping motorists without cause.  Therefore, the Court **GRANTS** City's Motion for Summary Judgment on this claim.

C.    Failure to Train and Failure to Supervise

In order to sustain a claim for failure to train or failure to supervise, a plaintiff must show "(1) the supervisor failed to supervise or train the subordinate

official; (2) a causal link exists between the failure to train or supervise and the violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Montes v. Cnty. of El Paso, Tex., 2010 WL 2035821, at *15. "For an official to act with deliberate indifference, the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009). In order to demonstrate deliberate indifference, a plaintiff must show "a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." Id. Additionally, a plaintiff must show that the failure to train or supervise was part of an official custom or policy. Montes, 2010 WL 2035821, at *15.

The City argues that it properly trained Bhirdo. In support of this contention, the City submits excerpts from the Police Department Manual and the Poteet Police Department Code of Conduct. (Dkt. # 34, Ex. 3.) These documents detail the behavior expected from Poteet police officers and discuss when and how an officer may conduct a search or seizure and the actions an officer may or may not take when off duty. (Id. at 21, 55.) Additionally, the City relies on an affidavit from Leal, a long-time police officer and, at times, Interim Chief of Police and Chief of Police of the City of Poteet. (Dkt. # 34, Ex. 1.) Leal states that Bhirdo

17

was "a certified peace officer which meant that she had met her [Texas Commission of Law Enforcement Officer Standards and Education] certification and continuing education requirements." (Id., Ex. 1 ¶ 5.)  Further, Leal avers that

> the requirement that all stops, detentions, and arrests must be supported by reasonable suspicion or probable cause is a basic concept well known by certified peace officers.  In addition, all officers were expected to comply with our department's policy regarding searches and seizures and the City's policy of non-violation of individuals' constitutional rights.  Prior to May 1, 2010, I did not observe any conduct which indicated that [Bhirdo] was ignorant of the law of search and seizures and was in need of additional training.

(Id.)

In contrast, Plaintiff argues that the resignation of the City of Poteet's Police Chief, John Overstreet, in 2011 because of sexually explicit text messages he sent to female employees, including Bhirdo, demonstrates that there was inadequate supervision, discipline, and training within the Poteet Police Department.  (Dkt. # 36 at 10.)  Additionally, Plaintiff points to the news articles previously discussed in which the city manager acknowledges that there may be problems within the Poteet Police Department.  (Id.)

Although Plaintiff's evidence supports an inference that there were problems within the Poteet Police Department, Plaintiff has presented no evidence that these problems were related to the allegedly improper search and seizure he suffered or that Bhirdo's conduct was the result of a lack of training or supervision. Even viewing all of the evidence in the light most favorable to Plaintiff, he fails to

18

create an issue of fact as to whether the City provided adequate training or supervision.  Therefore, the Court **GRANTS** the City's Motion for Summary Judgment on this claim.

III.     Schneider's Motion for Summary Judgment

Schneider moves for summary judgment and argues that he is entitled to qualified immunity.  Section 1983 provides a civil cause of action to persons who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States through the actions of an individual acting under color of state law.  42 U.S.C. § 1983.  However, government officials are shielded from civil damages by the doctrine of qualified immunity when "performing discretionary functions . . . if their actions were objectively reasonable in light of the then clearly established law."  Bazan ex rel. Bazan v. Hidalgo Cnty., 246 F.3d 481, 488 (5th Cir. 2001).  Qualified immunity provides not only immunity from damages, but also immunity from the lawsuit itself.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  "Qualified immunity promotes the necessary, effective, and efficient performance of governmental duties, by shielding from suit all but the plainly incompetent or those who knowingly violate the law."  Tolan v. Cotton, 713 F.3d 299, 304 (5th Cir. 2013) (quoting Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)) (internal quotation marks omitted).

The Court applies a two-prong test to determine whether a defendant is entitled to qualified immunity.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009).  The first prong evaluates whether a constitutional right was violated.  Id.  The second prong examines whether the allegedly violated constitutional right was clearly established at the time of the conduct.  Id.  In Pearson, the Supreme Court announced that a court may choose which prong of the Saucier test to address first.  555 U.S. at 236. Moreover, the Supreme Court recognized that addressing the second prong of the Saucier test first "comports with [the] usual reluctance to decide constitutional questions unnecessarily."  Reichel v. Howards, 132 S.Ct. 2088, 2093 (2012).

The Court will address the second prong of the Saucier test first.  The second prong of Saucier asks "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and if so, whether the [defendant's conduct] was objectively unreasonable in light of the then clearly established law."  Tolan, 713 F.3d at 304–05 (internal quotation marks omitted). The inquiry into these intertwined questions focuses on whether the officer "violated clearly established . . . constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "A right is clearly established if, in light of preexisting law, the unlawfulness of an action

would be apparent to a reasonable officer."  Manis v. Lawson, 585 F.3d 839, 845–
46 (5th Cir. 2009).

Plaintiff alleges that Schneider violated his rights against
unreasonable seizure.  (FAC ¶ 47.)  Plaintiff contends that Schneider assisted
Bhirdo with his detention, detained him for longer than necessary, seized his cell
phone without probable cause, restrained Plaintiff for an unreasonable time,
knowingly detained Plaintiff on a non-existent charge of Felony Evading Arrest,
fabricated a criminal charge against Plaintiff, and searched Plaintiff without
probable cause.  (Id. ¶ 48.)

Schneider argues that he is entitled to qualified immunity for his
actions.  (Dkt. # 33.)  In his affidavit, Schneider states that (1) he was dispatched as
a cover officer to assist Bhirdo; (2) he arrived at the scene after the events
allegedly creating probable cause occurred; (3) Bhirdo was in uniform at the scene
and related to Schneider an account of events that supported charges for
obstructing a highway under Penal Code § 42.03 and evading arrest under Penal
Code § 38.04; (4) he agreed that the facts related by Bhirdo supported probable
cause; (5) Bhirdo was the officer who actually arrested Plaintiff; and (6) he
followed Bhirdo to the jail, but did not arrest or transport Plaintiff.  (Id., Ex. 1.)
Specifically, Schneider avers that "Officer Bhirdo explained to me that she was
going to issue [Plaintiff] a citation[,] but that he fled the scene.  Bhirdo informed

21

me that she then followed Reynolds in her personal vehicle with emergency lights

flashing but that he evaded arrest.  Officer Bhirdo explained to me that she was

finally able to stop [Plaintiff] by getting in front of his vehicle, forcing him onto

the shoulder of IH 37 North."  (Id.)  Schneider states that based on the information

Bhirdo related to him, he believed there was probable cause to arrest Plaintiff.

Schneider also presents the testimony of another police officer, Albert

Ortiz ("Ortiz"), whom Schneider has retained as an expert witness.  Ortiz states he

has 33 years of experience in a police department and that he held every rank in the

department including that of Chief of Police.  Ortiz avers that

> nothing in the record indicates that there was anything obvious that
> [Schneider] knew or should have known that would cause him to
> believe the probable cause, arrest, detention, or administrative duties
> related to the arrest of plaintiff were faulty and he should have
> intervened to stop the process.  Since Officer Schneider works for a
> different police agency and he arrived after the plaintiff's arrest, he
> was not in a position to countermand the decisions made by [Bhirdo].

(Id., Ex. 2.)

Plaintiff presents no competent evidence to contradict Schneider's

statements.  Rather, Plaintiff offers only an unsworn statement alleging that

Schneider's actions included screaming at Plaintiff, entering his truck to obtain

Plaintiff's cellphone without permission or a warrant, and, after handing the phone

back to Plaintiff momentarily, grabbing it back out of Plaintiff's hands.  (Dkt. # 35,

Ex. 1.)  Plaintiff states that Bhirdo handcuffed him and placed him in the backseat

of her car and that he was booked at the jail, but does not state which officer did this.  (Id.)  However, under the Federal Rules of Evidence, and Fifth Circuit precedent, unsworn statements are not proper evidence to defeat a motion for summary judgment.  Gordon v. Watson, 622 F.2d 120, 123 (1980); Fed. R. Civ. P. 56.  But even if the court were to consider Plaintiff's statement, it does not provide any information that would warrant a denial of summary judgment in this case.

Although, Plaintiff spends the majority of his opposition insinuating that his version of events is more believable, and therefore the Court should deny summary judgment, Plaintiff misunderstands the purpose of summary judgment.  When evaluating a motion for summary judgment, the Court does not weigh the credibility of the evidence, but rather the Court looks to whether there is a genuine issue of material fact sufficient to warrant the presentation of the case to a jury.  MAN Roland Inc. v. Kreitz Motor Express, Inc., 438 F.3d 476, 478–79 (5th Cir. 2006); Celotex, 477 U.S. at 322–23.  Plaintiff is not entitled to rely on the allegations in the pleadings to defeat a motion for summary judgment, but must present evidence to demonstrate a genuine issue of material fact.  Grady v. El Paso Community College, 979 F.2d 1111, 1114 (5th Cir. 1992).  Here, Plaintiff asserts he has a more believable version of events, but he fails to present any actual evidence in support.  Plaintiff does not introduce any evidence demonstrating that Schneider engaged in any action depriving Plaintiff of his rights.  Schneider was

not present on the scene when Bhirdo conducted the allegedly unlawful seizure of Plaintiff.  (FAC ¶¶ 14–15.)

In evaluating whether Schneider is entitled to qualified immunity, the Court examines whether Schneider's actions violated a clearly established right of which a reasonable person would have known.  The only action traceable to Schneider is the alleged taking of Plaintiff's cellphone.  (Dkt # 35, Ex. 1.)  In his affidavit, Schneider states that Plaintiff <u>voluntarily</u> provided his cellphone to Schneider.  (<u>Id.</u>)  Plaintiff does not present an affidavit contradicting Schneider's statement or point to any evidence in the record casting doubt on Schneider's statement.  When facing summary judgment, Plaintiff cannot rely on the pleadings, but must go beyond them and "by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  <u>Celotex</u>, 477 U.S. at 324.  Plaintiff has not done so.  Therefore, the only competent summary judgment evidence before the Court shows that Plaintiff voluntarily gave Schneider his cell phone, and therefore Schneider did not violate a clearly established right of which a reasonable person would have known.

Even if there were evidence that Schneider's actions violated Plaintiff's Fourth Amendment rights, Schneider asserts he is entitled to qualified immunity because he reasonably relied on Bhirdo's statements, which, if true,

would have provided probable cause for Plaintiff's arrest.  Although this Court has found no case on point in the Fifth Circuit, the Tenth Circuit has held that, "[w]hen one officer requests that another officer assist in executing an arrest, the assisting officer is not required to second-guess the requesting officer's probable cause determination, nor is he required to independently determine that probable cause exists." Stearns v. Clarkson, 615 F.3d 1278, 1286 (10th Cir. 2010).  This Court finds the Tenth Circuit's precedent persuasive, and Plaintiff has provided no law justifying a different approach.  The Tenth Circuit maintains that "a police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." Id.  Here, there is nothing to suggest that Schneider's reliance on Bhirdo's statements was anything but reasonable.

Although Plaintiff claims that Schneider acted unreasonably because he charged Plaintiff with Felony Evading Arrest, pursuant to Penal Code § 38.04, which he claims requires an officer to be using a marked vehicle, Plaintiff overplays his hand.  Section 38.04 provides that "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." Tex. Penal Code § 38.04.  This provision does not require that an officer be in pursuit in a marked vehicle. See Farrakhan v. State, 263 S.W.3d 124, 139 n.13 (Tex. App. 2006) (maintaining that an individual

25

"could have committed an offense under section 38.04 . . . if [the officer] had been pursuing [the individual] in an unmarked car – as long as [the individual] knew that his pursuer was a peace officer").  Rather, as stated in Schneider's affidavit, Bhirdo was dressed in her police uniform when she interacted with Plaintiff, making it reasonable for Schneider to conclude that Plaintiff may have violated § 38.04.  Therefore, the Court finds that Schneider's actions were objectively reasonable under the circumstances.  Because Schneider actions did not depart from those a reasonable officer would have taken under the circumstances, Schneider is entitled to qualified immunity, and his motion for summary judgment is **GRANTED.**

There is no question that if Plaintiff's allegations are true, Bhirdo's conduct clearly violated Plaintiff's rights.  However, the conduct was Bhirdo's, and there is no admissible evidence imputing that conduct to the City of Poteet or to Schneider.

<u>CONCLUSION</u>

For the reasons state above, the Court **GRANTS** the City of Poteet's

Motion for Summary for Summary Judgment (Dkt. # 34) and **GRANTS** Defendant

Schneider's Motion for Summary Judgment (Dkt. # 33).

IT IS SO ORDERED.

DATED:  San Antonio, Texas, April 4, 2014.

_____

David Alan Ezra
Senior United States Distict Judge